UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LEE D. TURNER                                              PLAINTIFF

VS.                               CIVIL ACTION NO. 3:14CV347TSL-JCG

SOUTHEASTERN FREIGHT LINES, INC.                          DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Southeastern Freight Lines (SEFL) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Lee D. Turner, proceeding *pro se*, has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes the motion is well taken and should be granted.

Plaintiff, a former employee of SEFL, brought the present action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, alleging claims of race discrimination, retaliation and hostile work environment based on race and/or retaliation. In general, plaintiff states that in 2003, he filed a charge of race discrimination based on an alleged altercation in which a supervisor first assaulted and then fired him. He alleges that because of his race (African-American) and because he filed that 2003 EEOC charge, he has been denied breaks, given reduced hours, issued unfounded and/or unwarranted disciplinary actions, and further, has been subjected to racially derogatory comments.

Defendant denies plaintiff's allegations and contends that based on the evidence of record, each of his claims is due to be dismissed.

Background

SEFL is a transportation company that operates a fleet of trucks used to transport goods to various locations in the southern United States.  Plaintiff was employed by SEFL as a truck driver for twelve years, commencing in December 2001.  When he was first hired, his job involved picking up and delivering goods for customers.  In 2005, he moved to a "linehaul" position, in which he transported loads between SEFL service centers.  While plaintiff was initially a "wild driver," with no dedicated run, he eventually (no later than 2011) successfully bid on a dedicated run between Jackson and Baton Rouge.  Each night, plaintiff would make the round-trip drive between SEFL's Jackson Service Center and the Baton Rouge Service Center.  While at the Baton Rouge Service Center, he would perform various duties at the dock, including loading and unloading freight.

Based on his deposition testimony and his declaration submitted in support of his response to SEFL's motion, plaintiff complains of a number of incidents which he contends occurred because of his race and/or because of his 2003 complaint of race discrimination, as follows:

- In September 2004, despite being in the lead in a company-wide contest for which the grand prize was an all expense-paid trip, another employee with fewer leads was declared the winner;

- In 2004, he was written up for clocking in six minutes early while two Caucasian coworkers' time cards were adjusted by supervisors to prevent a violation;

- In 2009, he was removed from a temporary assignment two weeks early;

- In January 2013, he was issued a First Level Corrective Action relating to a "fifth wheel" accident in which his trailer became separated (as SEFL attributed the accident to operator error), and he was issued a Final Level Corrective Action for failure to report the incident and for misleading or deceptive conduct.

- In February 2013, he was "not allowed to work on the dock in Baton Rouge," or rather was given reduced hours, whereas two Caucasian coworkers, Ed Johnson and W. Porter, were allowed to work.

- Beginning around February 2013, he was not allowed to take breaks in Baton Rouge while other workers were allowed to "break at leisure."

- In April 2013, he was issued a First Level Corrective Action for carelessness and failure to properly perform policy and procedure relating to an incident in which the forklift he was operating pierced a drum containing hazardous material.

- On July 9, 2013, Andrew Albertson, the dock supervisor in Baton Rouge, referred to him in a racially derogatory manner by twice calling him "boy."

- In August 13, 2013, he was issued a First Level Corrective Action after backing his trailer into a pole.

- Following an October 23, 2013 verbal altercation with Andrew Albertson, he was issued a Final Level Corrective Action for uncooperative attitude and failure to follow policy/procedure.[1]

---

[1]     Plaintiff was not terminated by defendant but rather continued to work until he sustained an on-the-job injury in

Race Discrimination

Title VII provides that "[i]t shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "Title VII discrimination can be established through either direct or circumstantial evidence." Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003).  "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 539 U.S. 926, 123 S. Ct. 2572, 156 L. Ed. 2d 602 (2003)).  In a case where the plaintiff has not presented direct summary judgment evidence of discrimination and instead relies on circumstantial evidence, the court applies the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Here, plaintiff asserts that he has presented "direct evidence of race-based animus" and points in particular to evidence that he claims shows that similarly situated Caucasian employees were treated more favorably than he was treated.  This

---

December 2013 which rendered him unable to continue to work for defendant.

is quintessential circumstantial evidence.  Plaintiff has also presented evidence that a supervisor, Andrew Albertson, referred to him as "boy" on one occasion.  However, for an alleged discriminatory remark to constitute direct evidence of racial discrimination, the statement must be "(1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue." Reilly v. TXU Corp., 271 Fed. App'x 375, 379 (5th Cir. 2008) (citing Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 405 (5th Cir. 2001)). Even assuming the first requirement is met, the other three plainly are not.  Thus, McDonnell Douglas applies.

Under the McDonnell Douglas framework, an employee claiming race discrimination must first establish a *prima facie* case of race discrimination, by demonstrating that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was replaced by someone outside the protected class, or was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  See Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).  Once an employee has made out a *prima facie* case, an inference of intentional discrimination is raised

and the burden of production shifts to the employer, which must offer an alternative non-discriminatory explanation for the adverse employment action.  Id.  If the employer comes forward with legitimate nondiscriminatory reasons for the adverse employment action, the plaintiff must then prove "(1) that the reasons proffered were false and were thus a pretext for discrimination or (2) that even if the reasons are true, [race] was a motivating factor."  See Bugos v. Ricoh Corp., No. 07-20757, 2008 WL 3876548, at *3 (5th Cir. Aug. 21, 2008) (gender discrimination case).  The plaintiff "can meet this burden 'by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's non-discriminatory reasons are merely pretext for discrimination.'"  Id. (quoting Machinchick v. PB Power, Inc., 398 F.3d 345, 356 (5th Cir. 2005)).

    SEFL contends in its motion that plaintiff cannot establish a prima facie case of race discrimination because he cannot show either that he suffered an adverse employment action or that any similarly situated employee outside the protected class was treated more favorably.  With respect to the former requirement, in discrimination cases, the Fifth Circuit holds to a "strict interpretation" of the adverse employment element of a prima facie case of discrimination.  Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004).  An "adverse employment action" for Title VII discrimination claims "'include[s] only ultimate employment decisions such as hiring, granting leave, discharging, promoting,

or compensating.'" <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 559 (5th Cir. 2007) (quoting <u>Green v. Administrators of Tulane Educ. Fund</u>, 284 F.3d 642, 657 (5th Cir. 2002)).  To be actionable, an adverse employment decision must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 764, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).  Thus, conversely, "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." <u>Pegram</u>, 361 F.3d at 282 (quoting <u>Banks v. E. Baton Rouge Parish Sch. Bd.</u>, 320 F.3d 570, 575 (5th Cir.), <u>cert. denied</u>, 540 U.S. 817, 124 S. Ct. 82, 157 L. Ed. 2d 34 (2003)).  If an employer's action fails to have more than a "mere tangential effect on a possible future ultimate employment decision," it does not constitute an adverse employment action. <u>See Mota v. Univ. of Texas Houston Health Science Ctr.</u>, 261 F.3d 512, 519 (5th Cir. 2001) ("An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than a 'mere tangential effect on a possible future ultimate employment decision.'") (quoting <u>Walker v. Thompson</u>, 214 F.3d 615, 629 (5th Cir. 2000)).

In the case at bar, most of plaintiff's complaints relate to matters that clearly do not qualify as adverse employment actions.

His claim that he was denied breaks or unfairly deprived of the prize in a contest obviously do not qualify.  Neither do his complaints pertaining to receiving "Corrective Actions."  It appears each Corrective Action issued to him was in the nature of a disciplinary warning that carried no tangible adverse consequences.  See Carthon v. Johnson Controls, Inc., 100 Fed. App'x 993, 997 (5th Cir. 2004) (employee's "receipt of a single disciplinary warning—without an attendant change in the terms or conditions of his employment—does not qualify as an ultimate employment decision."); Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997)("having documented reprimands in [employee's] file may have increased the chance that she would *eventually* suffer an adverse employment action but ... they [were not] ultimate employment decisions nor did they rise above having mere tangential effect on a possible future ultimate employment decision"), reversed on other grounds, Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); Davis v. Miss. Transp. Comm'n, 618 F. Supp. 2d 559, 564 (S.D. Miss. 2009) ("[A]n employment action that limits an employee's future opportunities for promotion, but does not affect the employee's job duties, compensation, or benefits, does not qualify as an adverse employment action."); Jones v. FJC Security Servs., Inc., 40 F. Supp. 3d 840, 849-50 (S.D. Tex. 2014) ("By themselves, documented reprimands, though potentially affecting future employment decisions, do not qualify as adverse employment

decisions.") (citing <u>Thompson v. Exxon Mobil Corp.</u>, 344 F. Supp. 2d 971, 981 (E.D. Tex. 2004)).[2]  Plaintiff's claim that he was removed two weeks early from what was admittedly a *temporary* assignment to a dedicated run and returned to his regular position as a "wild driver" is not an adverse employment action.  <u>Cf</u>. <u>Anthony v. Donahoe</u>, 460 Fed. App'x 399, 403 (5th Cir. 2012) (employee's temporary reassignment to another facility not an adverse employment action where she received the identical salary and benefits she received at her prior position and could return to former position once situation necessitating the transfer was rectified).

Plaintiff does complain that in February 2013, the hours he was allowed to work at the Baton Rouge Service Center were reduced, which he implies resulted in a loss of income.  A reduction in hours which results in a loss of pay can constitute an adverse employment action.  <u>See</u> <u>Rizzo v. Children's World Learning Ctrs., Inc.</u>, 173 F.3d 254, 260 (5th Cir. 1999)(jury could find adverse employment action where plaintiff's duties were exchanged with another employee, and plaintiff's hours were reduced, forcing her to work a split shift in which she still did not work enough hours to qualify for benefits), <u>aff'd</u> <u>en</u> <u>banc</u>, 213 F.3d 209 (5th Cir. 2000); <u>Lopez v. Donahoe</u>, Civil No. 1:11-CV-189,

---

[2]    With regard to the "fifth wheel" accident, plaintiff admits that while he was initially issued Corrective Actions, they were subsequently rescinded when an investigation determined that the accident was due to an equipment malfunction.

2015 WL 1311377, 11 (S.D. Tex. Mar. 23, 2015) (suspension of employee's driving privileges which in turn resulted in reduction in the hours he was allowed to work—and by extension his ability to earn—constituted adverse employment action); Slaughter v. Word of Faith Intern. Christian Ctr., Civ. Act. No. 3:11cv364-DPJ-FKB, 2012 WL 5612373, at *4 (S.D. Miss. Nov. 15, 2012) ("reduction in hours/wages ... could present tangible employment actions") (citing Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006) ("A reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action.")).   SEFL points out that the reduction in hours was only temporary, lasting only a few weeks; and in its rebuttal, it likens this to a suspension with only a few days' loss of pay, which it submits does not amount to an adverse employment action.   See Stewart v. Mo. Pac. R.R., 121 Fed. App'x 558, 562 (5th Cir. 2005) (affirming district court's decision that suspension with loss of five days' pay was "not on par with hiring, firing, failing to promote, or reassignment with significantly different responsibilities.").   The court need not resolve this issue, however, because even assuming the reduction in hours was an adverse employment action, plaintiff still cannot establish a *prima facie* case of discrimination, as he has no evidence to show that similarly situated employees were treated more favorably in this respect.

Defendant argued in its initial brief that plaintiff's hours were temporarily reduced in February 2013 due to work being slow. It further noted that plaintiff had acknowledged both that this was the reason for his reduction in hours and that he knew of no other employees whose hours were not reduced as a result of the work being slow at that time.  In response to defendant's motion, however, plaintiff presented a declaration in which he asserts that two Caucasian workers, Ed Johnson and W. Porter, were allowed to work while he was not.  Defendant has asked that the court disregard this part of plaintiff's declaration, as it is plainly inconsistent with his earlier deposition testimony, in which he testified that he knew of one other truck driver who worked the dock in Baton Rouge but had never had a conversation with that other truck driver about whether his hours working the dock had been reduced, and in which he stated he did not know whether that other driver had experienced the same reduction in work.

As defendant notes, the Fifth Circuit has held that "a nonmovant cannot defeat a summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue." Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 136 n.23 (5th Cir.), cert. denied, 506 U.S. 845, 113 S. Ct. 136, 121 L. Ed. 2d 89 (1992).  Here, however, it is clear that summary judgment is in order, regardless of whether the court considers plaintiff's declaration.  Plaintiff states in his

declaration that in February 2013, "I was not being allowed to work on the dock in Baton Rouge, while Caucasian workers Ed Johnson and W. Porter were allowed to work."  In fact, plaintiff has testified that he did work some hours in February 2013 but that his hours were reduced; and he has offered no evidence as to how many hours Johnson or Porter was allowed to work as compared to him, nor has he suggested how he could possibly have personal knowledge of this information.  In rebuttal, though, SEFL has presented evidence that during the month of February 2013, Johnson and Porter were paid for a total of 1.5 and 1.25 hours, respectively, whereas plaintiff was paid for 21.62 hours during this time.  This claim is unfounded.

The court would further observe that even if any of the other incidents of which plaintiff complains could arguably be found to constitute an adverse employment action, plaintiff has not presented any competent evidence to show that he was treated less favorably than other similarly situated employees outside his protected class or that would otherwise support an inference of discrimination.  The court considers each incident, in turn.

To prove discrimination based on disparate treatment,

a plaintiff must demonstrate that the employer gave preferential treatment to another employee under "nearly identical circumstances." Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259–60 (5th Cir. 2009).  Employees that have different supervisors, different work responsibilities, or are subjected to adverse employment actions for dissimilar violations are not nearly identical. Id. at 260.  A nearly identical circumstance exists where the employees have the "same job or responsibilities, shared the same supervisor or had

their employment status determined by the same person,
and have essentially comparable violation histories."
Id. (footnotes omitted).

Rodriquez v. Wal-Mart Stores, Inc., 540 Fed. App'x 322, 326 (5th
Cir. 2013).

   The only evidence plaintiff has presented in support of his
claim that he was written up in 2004 for clocking in early while
two Caucasian coworkers' time cards were adjusted by supervisors
to prevent a violation, are unauthenticated (and barely legible)
time cards.  He has offered no evidence to show that he was
similarly situated to the alleged coworkers.

   Plaintiff has offered no comparator (or other) evidence to
suggest that his early removal from an admittedly temporary
assignment in 2009 was racially motivated.  According to
plaintiff's own explanation, he was allowed to drive that
particular dedicated route temporarily, while the bid process for
the route was ongoing.  When it became apparent that an individual
with more seniority had bid for and was entitled to and would be
awarded the route, that individual was allowed to move into the
route prior to the conclusion of the official bid process.

    Morever, while one of plaintiff's chief complaints appears
to be that he was not allowed to take breaks while working on the
dock in Baton Rouge while others could take breaks whenever they
wanted, he has offered no evidence that similarly situated
employees outside his protected class were permitted breaks under
nearly identical circumstances.  Plaintiff, who is a cigarette

smoker, testified that he could smoke in his truck on his way to and from the Baton Route Service Center, and that he was entitled by law to a thirty-minute break while in Baton Rouge.  However, he wanted an additional break to smoke.  In response to his request that he be allowed smoke breaks, Baton Rouge management agreed that he could have such breaks, subject to operational needs and prior permission.  In other words, he was required to check with his supervisor before taking a break, and could be asked to continue working if things were busy.

Plaintiff claims that "[o]ther workers were walking off ad lib; making sandwiches, taking their trash out of their personal vehicles and placing it into dumpsters."  However he does not undertake to identify any of these "other employees."  Moreover, he claims that Andrew Albertson slept while at work and an employee named Robert played on his phone.  SEFL states that "Robert" is likely Robert English, one of plaintiff's supervisors. Obviously, supervisors, such as Albertson and English, are not proper comparators.

Plaintiff admits that he caused a spill in April 2013 by piercing a drum of hazardous materials with his forklift, for which he was issued a Corrective Action; and he admits that this conduct warranted a Corrective Action.  He claims, though, that another employee, known only as James, was not written up after causing a similar spill.  Defendant notes that the James to whom

14

plaintiff is likely referring is James Bass, who was, in fact, issued a Corrective Action in November 2013 for causing a spill.

Plaintiff similarly claims that another employee was involved in an incident similar to the incident in which plaintiff backed into a pole.  He claims that while the other employee was issued a Corrective Action, as was he, the other employee's Corrective Action, unlike his, did not contain the warning that further occurrences could result in further disciplinary action, up to and including termination.  He admits, however, that he did not see the other employee's Corrective Action form.  SEFL states in its motion, and has presented supporting evidence, that the employee to whom plaintiff is likely referring is Leslie Summers, whose Corrective Action did include the same warning about future occurrences as plaintiff's.

Plaintiff last claims that he was issued a Final Level Corrective Action for an uncooperative attitude and failure to follow policy/procedure following a verbal altercation with the dock supervisor, Andrew Albertson, on October 24, 2013.  Plaintiff has not attempted to show that any other employee who engaged in similar conduct to that in which he was alleged to have engaged did not receive a similar disciplinary warning.  Instead, he takes the position that he did not engage in the conduct for which the Corrective Action was issued and that the warning was thus unwarranted.  However, even if plaintiff could show that he did not engage in the conduct for which the Corrective Action was

issued, he cannot show that defendant's decision to issue the Corrective Action was pretext for discrimination.

The evidence establishes that on October 23, 2013, Albertson reported to his superiors that after he found plaintiff taking a smoke break, for which he had not requested permission, he told plaintiff to return to work. Plaintiff said he would return when he finished his cigarette. When five minutes passed and plaintiff had not returned, Albertson went and found plaintiff was just putting out his cigarette. When plaintiff began walking toward the dock at an unnecessarily slow pace, Albertson told plaintiff to pick up the pace; plaintiff retorted, "Do you want me to run?" Albertson responded that plaintiff need not run, but he did need to move faster. When plaintiff said he was moving as fast as he could, Albertson responded that plaintiff could clock out and sit in his truck if that was the best he could do and he, Albertson, would find someone who could move faster. Plaintiff told him something to the effect of "This isn't the end of this. You've brought the wrath upon you."

Plaintiff was interviewed during SEFL's investigation of this incident. During the interview, plaintiff claimed that he put out his cigarette and began walking back to the dock as soon as Albertson came to get him the first time; and he claimed that Albertson's assertion that plaintiff raised his voice or made any threat was an "outright lie." Beyond that, plaintiff stated that

he "want[ed] to decline to answer and consult legal representation."

In the related context of an employer's assertion of an employee's job performance as the basis for his termination, the Fifth Circuit has held that

> "[a] dispute in the evidence concerning ... job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence."  "The question is not whether an employer made an erroneous decision; it is whether the decision was made with a discriminatory motive."  Thus, we consider whether an employer's good faith perception of [the employee's] performance, accurate or not, was the real reason for his termination.

Bugos, 2008 WL 3876548, at *4.  See also Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 379 (5th Cir. 2010) (explaining that a plaintiff's assertion of innocence relating to the stated reason for termination does not create a factual issue as to the falsity of that reason because the issue is not the truth or falsity of the plaintiff's wrongdoing, but rather is whether the employer believed the plaintiff was at fault and acted upon that belief in good faith); Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification.").

Here, while plaintiff has denied Albertson's version of their interaction on October 23, he has offered no basis for concluding

that SEFL did not in good faith believe Albertson's version and that issuance of a Corrective Action was warranted.

As to this claim for race discrimination, therefore, defendant's motion for summary judgment is well taken.

Hostile Work Environment

Plaintiff has also asserted a claim for race discrimination based on a hostile work environment theory.  This claim appears to be based on his allegations of disparate treatment – which the court has found to be unsupported by the evidence – coupled with his further allegation that on one occasion in July 2013, Andrew Albertson referred to him as "boy" twice.[3]

"In order to establish his hostile work environment claim, [plaintiff] must prove that his environment at [SEFL] was permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment." Jackson v. Honeywell Intern., Inc., 601 Fed. App'x 280, 287 (5th Cir. 2015) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22, 114 S. Ct. 367, 370-71, 126 L. Ed. 2d 295 (1993)); E.E.O.C. v. Boh Bros. Cost. Co., L.L.C., 731 F.3d 444, 453 (5th Cir. 2013) (en banc)).

> Where a harassment claim arises out of a supervisor's conduct, there are four elements of a hostile working environment claim: (1) that the employee belongs to a

---

[3]    Plaintiff has claimed that on that date, Albertson's forklift was adjacent to his and he was inadvertently about to get on Albertson's, when Albertson said, "Boy, don't get on my forklift."  He asked Albertson to repeat what he had said, and he did.  Albertson has denied this allegation.

> protected class; (2) that the employee was subject to
> unwelcome [] harassment; (3) that the harassment was
> based on [a protected characteristic]; and (4) that the
> harassment complained of affected a term, condition, or
> privilege of employment....  We use an objective
> "reasonable person" standard to evaluate severity and
> pervasiveness.  Ultimately, whether an environment is
> hostile or abusive depends on the totality of the
> circumstances.
> Boh Bros., 731 F.3d at 453.

Jackson, 601 Fed. App'x at 287.  As a matter of law, Albertson's

alleged reference to plaintiff as "boy" on a single occasion is

not sufficient to constitute a hostile work environment.  See id.

at 288 (finding that isolated comments that did not affect the

terms and conditions of the plaintiff's employment were not severe

or pervasive enough to have created a hostile working

environment).

Retaliation

Plaintiff complains that he was retaliated against because he

filed an EEOC charge in 2003.  "Title VII prohibits retaliation

against employees who engage in protected conduct," such as filing

a charge of harassment or discrimination.  Perez v. Region 20

Educ. Serv. Ctr., 307 F.3d 318, 325 (5th Cir. 2002).  To make out

a *prima facie* case of retaliation, a plaintiff must demonstrate

(1) he engaged in an activity protected by Title VII; (2) the

employer took an adverse employment action against the employee;

and (3) there is a causal connection between the protected

activity and the adverse employment action.  Spencer v. Schmidt

Elec. Co., 576 Fed. App'x 442, 448 (5th Cir. 2014) (citing Brazoria

Cnty. v. EEOC, 391 F.3d 685, 692 (5th Cir. 2004)).  "If the

plaintiff presents a *prima facie* case, the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action." <u>Valderaz v. Lubbock Cty. Hosp. Dist.</u>, – Fed. App'x –, 2015 WL 3877788, at *3 (5ᵗʰ Cir. June 24, 2015) (internal quotation marks and citation omitted). "If the defendant does so, the burden returns to the plaintiff to prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose." <u>Id.</u> "The plaintiff must prove pretext by the standard of but-for causation." <u>Roberts v. Lubrizol Corp.</u>, 582 F. App'x 455, 460 (5th Cir. 2014) (citing <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, --- U.S. ----, 133 S. Ct. 2517, 2533 (2013)).

Defendant submits summary judgment is in order on plaintiff's claim of retaliation as he cannot establish a causal nexus between his EEOC charge and the alleged adverse employment action(s).[4] The court agrees.[5]

---

[4]   It appears from SEFL's memorandum in support of its motion that SEFL has construed plaintiff's retaliation claim as being based solely on an allegation that defendant issued a Final Level Corrective Action to plaintiff in November 2013 in retaliation for his 2003 EEOC charge.  The complaint does not appear limited to this single allegation but rather appears to encompass all of the same incidents that are asserted by plaintiff in support of his race discrimination claim.

[5]   Plaintiff states in his declaration that he filed an EEOC charge on October 28, 2013 because "he was insulted and ridiculed" and "tired of being harassed and falsely accused." However, he does not appear to base his retaliation claim on his October 2013 charge but rather solely on the earlier 2003 charge. The court notes that the only action that occurred after the alleged October 28, 2013 EEOC charge was the issuance of the

The Fifth Circuit has held that

"Close timing between an employee's protected activity
and an adverse action against him may provide the
'causal connection' required to make out a prima facie
case of retaliation."  Swanson v. Gen. Servs. Admin.,
110 F.3d 1180, 1188 (5th Cir. 1997).  "However, we have
made clear that 'the mere fact that some adverse action
is taken after an employee engages in some protected
activity will not always be enough for a *prima facie*
case.'"  Roberson v. Alltel Info. Servs., 373 F.3d 647,
655 (5th Cir. 2004) (quoting Swanson, 110 F.3d at 1188
n.3).  Indeed, "[t]he cases that accept mere temporal
proximity between an employer's knowledge of protected
activity and an adverse employment action as sufficient
evidence of causality to establish a *prima facie* case
uniformly hold that the temporal proximity must be 'very
close.'"  Clark Cnty. Sch. Dist. v. Breeden, 532 U.S.
268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001).
This court has observed that "a time lapse of up to four
months has been found sufficient to satisfy the causal
connection for summary judgment purposes," Evans v. City
of Houston, 246 F.3d 344, 354 (5th Cir. 2001) (emphasis
added) (internal quotation marks omitted), whereas a
time lapse of five months does not, without additional
evidence of retaliation, establish causation.  See Raggs
v. Miss. Power & Light Co., 278 F.3d 463, 472 (5th Cir.
2002).

---

November 1, 2013 Corrective Action.  Even if plaintiff has
asserted a retaliation claim based on the October 2013 EEOC
charge, defendant would be entitled to summary judgment as
plaintiff has not shown that defendant's articulated reason for
issuing the Corrective Action was pretext for retaliation.  See
Miller v. Metro Ford Auto. Sales, Inc., 519 Fed. App'x 850, 853
(5th Cir. 2013) (stating that even if the employer "mistakenly
assumed that [the plaintiff] intentionally violated company policy
by violating the consignment agreement, that mistake is
insufficient to demonstrate that [the defendant's] stated
rationale for terminating him was mere pretext for retaliation"
since the issue is whether the employer believed the plaintiff was
at fault and acted upon that belief in good faith).  Nor has he
shown that the Corrective Action would not have been issued "but
for" the filing of the EEOC charge.  See Roberts v. Lubrizol
Corp., 582 F. App'x 455, 460 (5th Cir. 2014) ("The plaintiff must
prove pretext by the standard of but-for causation.") (citing
Univ. of Tex. Sw. Med. Ctr. v. Nassar, --- U.S. ----, 133 S. Ct.
2517, 2533 (2013)).

Robinson v. Our Lady of the Lake Reg. Med. Ctr., Inc., 535 Fed. App'x 348, 353 (5th Cir. 2013).  In this case, however, there is *nothing* – not even temporal proximity – to link any of the complained-of incidents, to plaintiff's 2003 EEOC charge. Plaintiff cites an incident in 2004, one in 2009, and a few in 2013, which occurred one year, six years and ten years, respectively, after he filed his EEOC charge.  See Robinson, 535 Fed. App'x at 354 ("Five and six month gaps, respectively, between a protected activity and an adverse employment action, are not 'very close' for the purpose of establishing a causal link").  As plaintiff cannot establish a *prima facie* case, defendant is entitled to summary judgment on plaintiff's retaliation claim.[6]

---

[6]     Although not raised by defendant, it is apparent that plaintiff cannot establish the other element of his *prima facie* case either.  The standard for what constitutes an "adverse employment action" for purposes of a retaliation claim is somewhat different from the standard for a discrimination claim.  For a retaliation claim, "an adverse employment action is an action that is 'materially adverse', that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination'." Jackson v. Frisco Indep. Sch. Dist., –F.3d – , 2015 WL 3687803, at *8 (5th Cir. Feb. 22, 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).  However, even under this standard, none of the incidents which plaintiff has identified in support of his retaliation claim – which are the same incidents he has identified as the basis for his race discrimination claim – qualifies as "materially adverse." See Hernandez v. Johnson, 514 Fed. App'x 492, 499 (5th Cir. 2013) (finding that "Letter of Counseling was not an adverse employment action") (citing Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (letter of counseling, letter of reprimand, and unsatisfactory performance review were not adverse actions)); Earle v. Aramark Corp., 247 Fed. App'x 519, 524 (5th Cir. 2007) (per curiam) (observing that "disciplinary write-ups" and "micro-managing" are not "materially adverse employment actions"); Robinson v. Our Lady of the Lake Regional Med. Ctr., Inc., 535 Fed. App'x 348, 351 (5th Cir. 2013) (mistreatment that was not

Conclusion

Based on all of the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this ___6th___ day of July, 2015.


                              /s/Tom S. Lee_____
                              UNITED STATES DISTRICT JUDGE

---

treatment was not so severe or pervasive as to constitute a hostile work environment was not a materially adverse employment action).